IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBORA DELFIN,                    )
                                  )    Civil No. 04-1519-JE
        Plaintiff,                )
                                  )
    v.                            )    FINDINGS AND
                                  )    RECOMMENDATION
JO ANNE B. BARNHART,              )
commissioner, Social              )
Security Administration,          )
                                  )
        Defendant.                )

        Rory Linerud
        Linerud Law Firm
        P.O. Box 1105
        Salem, OR  97308
            Attorney for Plaintiff

        Karin J. Immergut
        U.S. Attorney
        Neil J. Evans
        Asst. U.S. Attorney
        1000 S.W. 3rd Avenue, Suite 600
        Portland, OR  97204-2902

        Joanne E. Dantonio
        Special Assistant United States Attorney
        Social Security Administration

        1 - FINDINGS AND RECOMMENDATION

701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
        Attorneys for Defendant

JELDERKS, Magistrate Judge.

Plaintiff Debora Delfin brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-03, 1381-83f.  For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

Plaintiff filed applications for DIB and SSI on June 1, 2000, alleging that she had been disabled since September 1, 1999, because of tone deafness in her right ear, depression, arthritis, chronic bronchitis, asthma, allergies, and headaches.  Plaintiff's applications were denied initially on December 13, 2001, and were denied on reconsideration on March 1, 2002.

Based upon plaintiff's timely request, a hearing was held before Administrative Law Judge (ALJ) William Philip Horton on April 20, 2004.  Plaintiff, who was represented by counsel, testified at the hearing.  Also testifying was Myrna Stone, plaintiff's mother.  A supplemental hearing was held on July 7,

2 - FINDINGS AND RECOMMENDATION

2004 to take testimony from Eileen Lincicome, a Vocational Expert (VE).

In a decision issued on August 19, 2004, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act because she had the residual functional capacity (RFC) to perform her past relevant work as a stores laborer as well as other work that existed in significant numbers in the national economy. That decision became the final decision of the Commissioner on October 6, 2004, when the Appeals Council denied plaintiff's request for review. In the present action, plaintiff appeals from that decision.

## Factual Background and Medical Evidence

Plaintiff was born on May 1, 1962, and was 42 years old when the ALJ issued his decision. She completed 12th grade, and has past relevant work experience as a home attendant, stock clerk, cashier/checker, bagger, gas station attendant, housekeeper, fast food worker, kitchen helper, theater attendant and stores laborer. She has not performed substantial gainful activity since September 1, 1999. The parties' disagreement as to the correctness of the ALJ's decision centers on whether the ALJ failed to incorporate certain mental and physical limitations into his RFC assessment; whether the ALJ failed to pose a complete and proper hypothetical to the VE; whether the ALJ failed to consider the impact of plaintiff's obesity on her ability to work; and whether the ALJ

failed to develop the record.  Accordingly, my discussion of the medical evidence is limited to the relevant records which the ALJ cited in his decision and which the parties have cited in their memoranda.

Luke Herscher, D.O., an examining physician, evaluated plaintiff on October 2, 2001.  Dr. Herscher recorded plaintiff's weight at 217 ½ pounds and her height at 66 1/4 inches.  He noted that plaintiff was a smoker and that her lungs had an occasional wheeze.  Though plaintiff reported that it was too painful for her to touch her toes, Dr. Herscher noted good range of motion of all four extremities, an ability to go from lying to sitting and sitting to standing without difficulty, and an ability to ambulate without assistance and to do self care.  Dr. Herscher stated that he felt "the severity of pain and patient condition is not consistent with objective findings and that her activities [are] not limited on objective findings."  Dr. Herscher opined that based on his objective medical findings, plaintiff can do "work related activities, with sitting, standing, walking, lifting, carrying objects, handling objects, hearing and speaking."

Dr. Judith Eckstein, an examining psychologist, conducted a psycho diagnostic evaluation of plaintiff on October 26, 2001.  Following the administration of a series of cognitive tests, Dr. Eckstein opined that plaintiff's responses indicated "good abstract reasoning ability," and that plaintiff "appears average in her

intellectual functioning with no cognitive deficits noted." Based primarily on plaintiff's reported history, Dr. Eckstein diagnosed her with dysthymia, posttraumatic stress disorder, primary insomnia as well as sleep disorder due to chronic pain, personality disorder with obsessive/compulsive and avoidant traits, rheumatoid arthritis, chronic bronchitis, allergies, asthma, severe poverty, unemployment, chronic pain, current legal problems, and unresolved past trauma. She rated plaintiff's GAF at 45.

Gary Dandy, M.D., a treating physician at the Open Door Clinic, examined plaintiff several times between September 18, 2001 and January 12, 2002. Dr. Dandy treated plaintiff for depression and anxiety, arthritis, and chronic bronchitis. Dr. Dandy prescribed a number of different anti-depressants and other medications to treat plaintiff's sleep problems, arthritis, chronic cough, and asthma. In addition, Dr. Dandy counseled plaintiff to quit smoking. In January 2002, Dr. Dandy noted that plaintiff "coughs, what seems like a volitional cough, about each 45 sec[onds]," and he told plaintiff that he believed some of her cough was habit.

Bryan McNutt, Nurse Practitioner (NP), a treating practitioner at the Open Door Clinic, examined plaintiff on April 30, 2002 and again on October 4, 2002. During her April visit, McNutt wrote a note excusing plaintiff from road crew duty due to some stress urinary incontinence secondary to her chronic cough. During her

October appointment, having observed plaintiff's "evident respiratory ease," McNutt noted with regard to her chronic cough that he "suspect[ed] a high level of somatization."

Scott Oldfield, Family Nurse Practitioner (FNP), a treating practitioner at the Open Door Clinic, examined plaintiff several times between November 15, 2002 and April 29, 2003 when her file was closed. At nearly every visit, Oldfield counseled plaintiff on the importance of quitting smoking and noted her unwillingness to commit to quitting at that time. During her December 31, 2003 appointment, Oldfield recorded plaintiff's weight at 230 pounds with a Body Mass Index (BMI) of 36.1. During her examination on February 27, 2003, Oldfield noted that plaintiff reported having a coughing fit the night before followed by lightheadedness and falling off her bed. During that same visit, Oldfield noted that plaintiff requested assistance with obtaining her medications because her health insurance coverage had lapsed.

In an assessment completed December 4, 2001, Dr. Dick Wimmers, a non-examining physician, opined that plaintiff is moderately limited in her ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[1] Dr. Wimmers reported that

---

[1] Notably, in the category of Sustained Concentration and Persistence, Dr. Wimmers opined that there is no evidence of limitation in plaintiff's ability to work in coordination with or proximity to others without being distracted by them.

6 - FINDINGS AND RECOMMENDATION

plaintiff possesses "adequate social skills but symptoms of depression, PTSD, personality factors preclude more than occasional contact [with] the public or extensive interaction [with] coworkers."

In an assessment completed December 12, 2001, Martin Kehrli, M.D., a non-examining physician, opined that plaintiff could lift fifty pounds occasionally and could lift 25 pounds frequently. The physician opined that plaintiff could sit for six hours in an eight-hour day, and could stand/walk for six hours in an eight-hour day. Dr. Kehrli opined that objective medical findings were inconsistent with the plaintiff's complaints and her statements of limited activity. Dr. Kehrli opined that plaintiff is "capable of medium work, w[ith] avoidance of moderate exposure to extreme cold or heat. This takes into account her complaints of cold worsening the pain." In addition, Dr. Kehrli opined that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation due to plaintiff's asthma. In his assessment, Dr. Kehrli also questioned plaintiff's credibility based on inconsistent statements she made regarding her prior drug use, symptom magnification, and her complaints of pain.

<u>Hearing Testimony</u>

1. <u>Plaintiff's Testimony</u>

Plaintiff testified that she lives with her mother and a friend in a house owned by that friend, and that her mother is her

sole source of support. She testified that she last received medical treatment in or about April 2003 when she discontinued her participation in the Oregon Health Plan because she could not afford the premiums ($6/month) or co-pays ($10/visit and $15/prescription).

Plaintiff testified that she has had a continuous cough for several years that caused her to lose her breath, vomit and suffer from incontinence. She testified that she has to use the restroom every 5-10 minutes and that factors such as smoke, perfume, hot or cold air, and anxiety can trigger her coughing.

Plaintiff testified that she has rheumatic arthritis affecting her knees, hips, fingers, and her ability to walk. She testified that she elevates her feet and tries to stay off of them to get relief. She further testified that she stopped taking her arthritis, breathing, and anti-depressant medications because she could not afford them.

Plaintiff testified that she suffers from severe depression, allergies, asthma, migraines, total deafness in her right ear, numbness and cramping in her legs, a 100 pound weight gain, anxiety attacks, sleeping problems, blurred vision, and compulsive behaviors. She testified that she gets stressed out, angers easily, and cries frequently, particularly when around a lot of people or noise. She also testified that she has difficulty concentrating or comprehending information.

Plaintiff testified that she used drugs in the past, primarily methamphetamine, but that she had graduated from a treatment program about a year earlier (approximately April 2003) and had been clean of drugs and alcohol ever since.  She also testified that she tried to go to school to learn computers, but that she did not finish the course and does not think she is capable of completing it.

2.  Lay Witness, Myrna Stone

Plaintiff's mother testified that she buys plaintiff generic cigarettes for $2.90/pack, and that plaintiff smokes approximately a half a pack of cigarettes every three or four days.  The witness testified that she receives an income of $912/month in Veterans and Social Security benefits.

The witness testified that she helps plaintiff by cooking, cleaning, and accompanying her to do shopping.  She also testified that plaintiff coughs constantly, with resultant vomiting and incontinence, and that she must use the restroom frequently.  She also confirmed that plaintiff has to lie down during the day, and that she suffers from depression, difficulty sleeping, and panic attacks (especially around groups of people).

3.  Vocational Expert

The ALJ posed a hypothetical to the vocational expert (VE) describing an individual of plaintiff's age, with plaintiff's education and work experience, who was capable of performing medium

work or less with non-exertional restrictions ruling out work involving: (1) telecommunication; (2) general interaction with the public; and (3) exposure to fumes, smoke, dust or chemicals.

In response to this hypothetical, the VE testified that the individual could perform plaintiff's past relevant work as a stores laborer and kitchen helper.  The VE also testified that the individual described could work as a small products assembler, hand packager, and marking clerk.

The ALJ posed a second hypothetical adding a restriction ruling out work requiring frequent or repetitive fine motor manipulation.  In response, the VE testified that the individual described in the ALJ's second hypothetical could work as a stores laborer and hand packer.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to

evaluate the claimant's case under Step Two.  20 C.F.R. §
4041520(b).

Step Two.  The Commissioner determines whether the claimant
has one or more severe impairments.  A claimant who does not have
such impairment is not disabled.  If the claimant has a severe
impairment, the Commissioner proceeds to evaluate claimant's case
under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe
impairment; therefore, the Commissioner next determines whether the
claimant's impairment "meets or equals" one of the impairments
listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P,
Appendix 1.  A claimant who has such an impairment is disabled.  If
claimant's impairment does not meet or equal one listed in the
regulations, the Commissioner's evaluation of the claimant's case
proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant
is able to perform work he or she has done in the past.  A claimant
who can perform past relevant work is not disabled.  If the
claimant demonstrates he or she cannot do work performed in the
past, the Commissioner's evaluation of the claimant's case proceeds
under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant
is able to do any other work.  A claimant who cannot perform other
work is disabled.  If the Commissioner finds that the claimant is

able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### ALJ's Decision

In the first two steps of the disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability, and that plaintiff's tone deafness in the right ear, asthma, frequent coughs, headaches, arthritis, a depressive disorder, and a history of substance abuse were severe impairments.

At step three, the ALJ found that these impairments did not meet or medically equal the criteria set out in the listings.

The ALJ found that plaintiff's allegations concerning her limitations "cannot be wholly accepted as credible," and that plaintiff retained the residual functional capacity

> to perform a reduced range of medium exertional level work. In recognition of the claimant's partial tone deafness, although she could hear the conversation at the hearing, she is precluded from work requiring telephone communications. In recognition of her respiratory problems, she is precluded from work that requires exposure to smoke, fumes, dust, and chemicals. In recognition of her arthritic complaints, frequent fine motor manipulation is precluded. In recognition of psychological impairments, interaction with the general public is precluded.

At step four, the ALJ found that plaintiff was not disabled because she could perform her past relevant work as a stores laborer.

Notwithstanding his finding at step four, the ALJ proceeded to evaluate step five and concluded that plaintiff could perform a "significant range of medium exertional level work," and could perform a number of jobs in the national economy. As examples of such work, the ALJ cited work as a stores laborer and hand packager. Accordingly, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.

<u>Standard of Review</u>

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than

13 - FINDINGS AND RECOMMENDATION

12 months." 42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in failing to incorporate certain mental and physical limitations in the RFC assessment; failing to include those limitations in the hypothetical posed to the VE; failing to consider the impact of

plaintiff's obesity on her ability to work; and failing to fully
develop the record.

1.  Failure to incorporate certain mental and physical limitations
in RFC assessment

       Plaintiff contends that the ALJ's RFC assessment was deficient
because he failed to identify which doctors he relied on in
reaching his decision and, without providing a basis for doing so,
failed to fully incorporate all plaintiff's impairments noted by
Drs. Wimmers and Kehrli.  Specifically, plaintiff contends that the
ALJ failed to fairly incorporate Drs. Wimmer and Kehrli's opinions
that plaintiff is:  1) moderately limited in her ability to get
along with coworkers or peers without distracting them or
exhibiting behavioral extremes; 2) mildly limited with difficulties
in maintaining concentration, persistence, or pace and activities
of daily living; and 3) unable to work in close proximity to even
moderate exposure to extreme heat or cold and concentrated exposure
to poor ventilation and gases.

       As a preliminary matter, plaintiff's contention that the ALJ
failed to "explain[ ] the physicians he relied [on] when reaching
his conclusions" is without merit.  In his decision, the ALJ
specifically referenced reports and findings of Drs. Herscher,
Eckstein, Dandy, Wimmers and Kehrli.  In addition, though Dr.
Wimmers indicated on one form that plaintiff had mild difficulty
maintaining concentration, persistence, or pace, when specifically

addressing this issue on the assessment form, Dr. Wimmers noted that plaintiff had "no significant limitations" in this area. Given this assessment, the ALJ did not err in omitting this limitation in his RFC assessment.

2.   <u>Failure to pose a complete and proper hypothetical to the VE</u>

In order to be accurate, an ALJ's hypothetical to a VE must set out all of the claimant's impairments. <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984) (<u>citing</u> <u>Baugus V. Secretary of Health & Human Services</u>, 717 F.2d 443, 447 (9th Cir. 1983)).  The ALJ's depiction of the claimant's limitations set out in the hypothetical  must be "accurate, detailed, and supported by the medical record." <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999).  If the assumptions included in the hypothetical are not supported by the record, a VE's opinion that a claimant can work does not have evidentiary value.  <u>Gallant</u>, 753 F.2d at 1456. However, "[a] decision of the ALJ will not be reversed for errors that are harmless." <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)(citing <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1131 (9th Cir. 1991)).

Plaintiff contends that the ALJ committed reversible error by failing to include restrictions relating to plaintiff's difficulties getting along with coworkers and working in close proximity to exposure to extreme heat or cold or concentrated exposure to poor ventilation or gases in his hypothetical posed to

16 - FINDINGS AND RECOMMENDATION

the VE.  I disagree.  According to the plaintiff's own description of her past relevant work as a stores laborer, that work did not require plaintiff to have extensive contact with coworkers or expose her to extreme heat or cold or concentrated exposure to poor ventilation or gases.  Accordingly, the ALJ's finding that plaintiff could perform her past relevant work as a stores laborer is supported by substantial evidence in the record.

Moreover, any deficiency in the hypothetical resulting from failure to include limitations relating to plaintiff's ability to get along with coworkers and to withstand exposure to extreme heat or cold or concentrated exposure to poor ventilation or gases was harmless error because these are not requirements of the stores laborer position as performed by plaintiff, as described in the Dictionary of Occupational Titles, or as testified to by the VE. See Dictionary of Occupational Titles, U.S. Dept. of Labor, DOT nos. 922.687-058  (4th ed. 1991).  Accordingly, even if the ALJ had included these limitations in his hypothetical to the VE, his finding that plaintiff could perform the specific job of stores laborer would still be supported by substantial evidence in the record.

3.   Failure to consider impact of plaintiff's obesity on her ability to work

Plaintiff contends that the ALJ "failed to address [her] obesity condition entirely" in contravention of Social Security

Rule (SSR) 02-01p, which requires that in the absence of evidence to the contrary, the ALJ will accept a diagnosis of obesity given by a treating source or by a consultative examiner.  In addition, despite having apparently conceded that she does not challenge the ALJ's severe impairment determination at Step Two, plaintiff argues that the ALJ failed to consider whether her obesity, either alone or in combination with her other limitations, constitutes a severe impairment.

The Ninth Circuit has addressed plaintiff's obesity argument. See Burch, 400 F.3d 676 (9th Cir. 2005).  In Burch, the ALJ did not find that the plaintiff's obesity was either a severe impairment or that it met or equaled a listing impairment.  Id. at 682.  In concluding that "the ALJ properly considered [the plaintiff's] obesity to the extent required based on the record," the court noted that the plaintiff failed to produce and it found no evidence in the record of any functional limitations resulting from her obesity that the ALJ failed to consider. Id. at 684.

Here, as in Burch, plaintiff points to and I find no evidence in the record of any functional limitations resulting from her obesity.  Significantly, in Burch the record included notes from doctors who observed plaintiff's weight gain, indicated explicitly that plaintiff was obese, and recommended that she participate in a medically supervised weight loss program.  Id. at 683.  In contrast, the only evidence supporting plaintiff's obesity claim

here is a few notes interspersed through the record of plaintiff reporting weight gain, plaintiff's hearing testimony that she had gained weight, and a recognition that her BMI (recorded at 36.1) falls within the clinically "obese" category."[2]

Furthermore, plaintiff did not allege obesity in her benefits applications, no physician explicitly diagnosed her as obese, and no doctor indicated that she should lose weight or that her excess weight was exacerbating her other medical problems.  Plaintiff testified that her weight gain is due to decreased activity as a result of her arthritis and breathing problems.  Nowhere in the record or on appeal does she assert that her weight in and of itself is causing her physical problems or exacerbating her other impairments.  Consequently, I conclude that the ALJ did not err in failing to account for the effects of plaintiff's clinical "obesity" because plaintiff has not claimed that she suffers from any ill effects of her weight and none are readily apparent in the record.

4.   Failure to develop the record

Plaintiff contends that the ALJ failed to fully develop the record when he failed to ask proper hypotheticals of the VE, failed to fully consider or accept the residual capacity assessments of Drs. Wimmers and Kehrli, and failed to consider the impact of

---

[2]    According to the Federal Obesity Guidelines obesity is defined as having a body mass index (BMI) of 30 and above.

plaintiff's obesity on her ability to work. I disagree. Certainly, an ALJ has a duty to further develop the record when the evidence is ambiguous or is inadequate to allow for proper evaluation of the evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001). However, here, the record as to plaintiff's impairments was adequate for the ALJ to properly evaluate their significance and effect on plaintiff's functional capacity.

## RECOMMENDATION

For the reasons identified above, the Commissioner's decision denying plaintiff's request for disability benefits should be AFFIRMED, and a judgment should be entered dismissing this action with prejudice.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due April 14, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under

///

///

///

///

20 - FINDINGS AND RECOMMENDATION

advisement upon receipt of the response, or the latest date for filing a response.

DATED this ___31st___ day of March, 2006.

_____/s/ John Jelderks_____

John Jelderks
United States Magistrate Judge

21 - FINDINGS AND RECOMMENDATION